### In re MILLER & BROWN (1).

(District Court, M. D. Pennsylvania. March 14, 1905.)

No. 549.

BANKRUPTCY—RECOVERY OF GOODS—SALES ON CONDITION.

Where claimant sold certain goods to a bankrupt firm, who were entitled to sell the goods at their discretion, their only obligation being to pay the price on sales made, or return the goods, the transaction amounted to nothing more than a contract of "sale and return," and the claimant was not entitled to recover the goods unsold as against the firm's trustee in bankruptcy.

In Bankruptcy. Sur petition of the Magee Carpet Company for order on trustee to turn over property.

Philip B. Linn, for petitioners.

Andrew A. Leiser and W. R. Follmer, for trustee.

ARCHBALD, District Judge. In cases of this character the local law governs, the title of the trustee being determined by the question whether the arrangement with regard to the property is good as against creditors. If it is, the property may be reclaimed; but, if not, it cannot be. Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986; In re Butterwick, 12 Am. Bankr. R. 536, 131 Fed. 371. The decisions upon the subject in Pennsylvania are numerous,

but they uniformly and consistently hold that, where goods are found in the possession of a debtor, to whom they have been duly transferred by negotiation with the owner, they are liable to creditors, unless a trust or bailment can be shown. A sale upon condition is not enough. It will be sufficient to refer for this to Ott v. Sweatman, 166 Pa. 217, 31 Atl. 102, where the cases are collated and reviewed. In the present instance the bankrupt firm, desiring to obtain an assortment of carpets and rugs or art squares in anticipation of the opening of the fall term of Bucknell University at Lewisburg, Pa., where they were engaged in business, Mr. Brown, one of the members, on September 14, 1904, called at the mill of the Magee Carpet Company, the present petitioners, at Bloomsburg, Pa., where he met Mr. Magee, the manager, and stated his errand. There had been previous dealings between the parties, and a balance of account against the firm of $161.64 had been standing unpaid since May previous. Mr. Magee called attention to this fact, and said that they did not care to increase it by any further credit; but he was assured by Mr. Brown that, according to the instructions of his partner, who looked after that end of the business, a check would be forthcoming the next week—a promise which, it may be noted in passing, was kept. Mr. Brown further explained that the university would open shortly, and that they always had calls from the students who were fitting up their rooms for a certain grade of carpets and art squares; and after selecting two rolls of carpet Mr. Magee agreed to make a further assortment of carpets and squares and ship them to him, upon the understanding that what the firm sold should be paid for, and what they did not could be returned. The goods to the amount of $319.68 were sent in a few days, and it is for the unsold portion of this consignment that claim is now made. The question is whether, under the circumstances, title passed as against creditors.

The petitioners contend, and Mr. Magee so testifies, that the goods were sent strictly on memorandum or approval, and not sold, the title to remain in them except as sales were made; and in confirmation of this the daily scratchbook, in which the order was entered, is produced, where the word "Mem." appears at the head of the bill. There is nothing, however, in the salesbook or the ledger to characterize the transaction as other than a straight sale, and in the invoice which was sent to Miller & Brown along with the goods they were charged at the regular prices, the same as they would have been if that was the case. This is not, of course, conclusive (Dows v. National Exchange Bank, 91 U. S. 618, 23 L. Ed. 214; Sturm v. Boker, 150 U. S. 312, 14 Sup. Ct. 99, 37 L. Ed. 1093), although not without a certain weight (Chapman v. Kerr, 80 Mo. 158). Neither was anything said at the time as to the prices at which the goods should be sold by the bankrupts to their customers, the only condition asserted or relied upon being that such of them as were should be paid for, and the rest returned. According to Mr. Magee, the return was to be at the expense of the carpet company; but this is a mere assumption, for he admits that nothing was said. Mr. Brown, on the other hand, testifies—and I accept his statement— that the firm were to pay the freight in case of a return, and that, in order to entitle them to do so, the property was to be in good condition; and the privilege, according to his recollection, was to be exercised with-

in 30 days. The shipment was received at the store September 18th, and the goods were at once put into the carpet department, along with the other stock on hand, and sales were made from time to time therefrom to the extent, at invoice prices, of $19.80, of which, however, no separate account was kept. The matter ran along in this way until October 21st, when the store was closed by the sheriff upon execution, and on October 27th a voluntary petition in bankruptcy was filed.

It is not clear from the evidence whether the arrangement on which the petitioners rely extended to the carpets as well as the art squares; Mr. Brown testifying that he bought two rolls of the former before it was suggested by Mr. Magee that he would make up an assortment of rugs or art squares, from which selections could be made by the students, and the balance be returned. Neither does it altogether appear that the transaction took on this form for the benefit of the carpet company, so that they might be protected in parting with their goods, any more than to relieve Miller & Brown from loading up with and carrying unneeded stock. The advantage to himself was probably in the mind of each party. But, however that may be, and assuming that the condition extended to the whole order, carpets as well as rugs, the result must be the same. It constituted nothing more than what is known in the law as a contract of "sale or return," in which the title passes to the party to whom the goods are delivered, subject to the exercise of the option to return them if he so desires. Moss v. Sweet, 16 Q. B. 493; Hunt v. Wyman, 100 Mass. 198; Hickman v. Shimp, 109 Pa. 16. This, it is true, is not the case where the party has the option of returning the goods if they prove unsuitable or unsatisfactory, of which he is necessarily the judge, the consignee there holding as bailee for the time within which he is called upon to declare his purpose with regard to them, which, if unspecified, must not exceed what is reasonable. Butler v. School District, 149 Pa. 351, 24 Atl. 308. But where the right to return does not depend upon any such consideration, but upon the mere will of the consignee, however moved, the transaction is a sale, and the title vests (24 Am. & Eng. Encycl. Law [2d Ed.] 1024); and that is the situation here. It is not like the case of McCullough v. Porter, 4 Watts & S. 177, 39 Am. Dec. 68, where the goods were to be sold on account of the party consigning them, for not less than the invoice prices, and the proceeds remitted to the extent of these prices, the party to whom they were consigned retaining all above that as his commission. Such an arrangement clearly created the relation of principal and factor, and constituted a bailment, the title to the goods remaining in the consignor until they were sold, and the money received being his, less the commissions earned by the other party. This was nothing more nor less than the case of one person putting his property into the hands of another for the purpose of sale. Neither is there any similarity to the case of the Keystone Watch Co. v. Bank, 194 Pa. 535, 45 Atl. 328, where the transaction was hedged about with the very stringent provisions that the goods consigned should only be sold at certain scheduled prices, and the proceeds at once remitted, and that all sales should be made by the consignees as agents, and so billed on special billheads, the owner also reserving the right to terminate the arrangement at any time and take back the goods. In the present in-

stance, however, the property passed into the hands of the bankrupts to be disposed of in whatever way, at whatever prices, and upon whatever terms they chose. It was mingled with their other store stock without distinction, and without any right of direction or control from the carpet company, whose only claim was to be paid the prices at which it had been shipped. This made it to all intents and purposes a sale (Braunn v. Keally, 146 Pa. 519, 23 Atl. 389, 28 Am. St. Rep. 811), which is not affected by the provision that whatever was not sold was to be returned. Whether we regard this as a privilege in favor of the bankrupts or a condition on which the property was parted with, it passed title for the time being, and before advantage had been taken of it the rights of creditors had supervened.

The petition is dismissed, with costs.