### In re MILLER & BROWN (2).

(District Court, M. D. Pennsylvania. March 14, 1905.)

No. 549.

BANKRUPTCY—SALE OF GOODS—BAILMENT—RECLAMATION.

Claimant's salesman applied to a bankrupt firm for an order for ribbons, and, the buyer being absent, the other member of the firm gave a small order, subject to the approval of the buying member after the goods were received. The goods shipped were considerably more than was ordered, and on receipt of them the buying member of the firm picked out those he wished to retain, which were separated from the others, and placed in stock, the balance being left in the original packages, set by themselves, and marked on the bills as "to be returned"; but before anything was done with them, and within a little more than a week after they were received, the stock, including the ribbons, was levied on by the sheriff and turned over to the firm's trustee in bankruptcy shortly thereafter. Held, that the transaction as to the ribbons to be returned was a bailment, and not a "sale and return," and that the seller was therefore entitled to recover the same from the firm's trustee.

In Bankruptcy. Sur petition of Pollock & Caskel for order on trustee to turn over property.

Philip B. Linn, for petitioners.
Andrew A. Leiser and W. R. Follmer, for trustee.

ARCHBALD, District Judge. The general principles which govern in cases of this character have been discussed in disposing of the petition of the Magee Carpet Co., 135 Fed. 868, and do not need to be repeated here. The facts upon which the case turns are not disputed. About October 1, 1904, in the absence of Mr. Brown, the member of the firm who did the buying, Mr. Pollock, one of the petitioners, called at the store of the bankrupts in Lewisburg, Pa., and solicited an order for ribbons. Mr. Miller, the other member of the firm, who was present, authorized the young lady in charge of that department to make out a list of the things which she thought were needed, which she did, and it was agreed between Mr. Miller and Mr. Pollock that these should be sent, subject to the

approval of Mr. Brown after they had been received. The goods were shipped in two parcels, one of $125.50 October 10 and the other of $48.69 a day or two later, and they were billed to the firm as payable 10 days after December 1 with 6 per cent. off if paid at that time. Considerably more were sent than had been listed, and upon their receipt Mr. Brown went over them, and picked out those which he wished to retain, which were separated from the others, and put with the stock of millinery goods which were already on hand. The rest were left in the original packages, and set by themselves on one side of the store, and were marked on the bills as to be returned. Before anything further was done with them, however, on October 21 they were levied on by the sheriff along with the other stock in the store, and, the firm having gone into bankruptcy a few days later, they were turned over to the trustee.

No claim is made here to the goods which were accepted and marked for sale. But it is contended by the petitioners, as to those which were not so treated, that, having been sent upon approval, no title passed unless they were found satisfactory and taken, and that, as they were not, they continued to remain their own. In my judgment, this position must be sustained. This is not like what is known in the law as a "sale and return." Hunt v. Wyman, 100 Mass. 198; Hickman v. Shimp, 109 Pa. 16; Reber v. Schitler, 141 Pa. 640, 21 Atl. 736. The bankrupts did not buy, in other words, with the right to return such part as they concluded not to retain. That was the case which was presented on the petition of the Magee Carpet Company, already referred to, where a discussion of the distinction will be found. From the goods sent, Mr. Brown, acting for the firm, was to make such selection as he saw fit, and this was promptly done. For those which were not accepted in this way, the bankrupts were not liable, and, if not liable, neither did they take title to them, and they may therefore be reclaimed as is now sought. It is true that the goods not approved were not in fact returned, nor was any notice given. But they were unmistakably separated from the others, and set by themselves, in the original cartons in which they came, in a different part of the store. These acts on the part of the bankrupts were sufficiently distinctive to indicate their intention with regard to them, of which they would have had the right to avail themselves if an effort was made to hold them for the price; and, as the matter is reciprocal, the petitioners are entitled to rely upon the same here. Nor is this affected by the circumstance that notice of this action was not given. The time within which the bankrupts were called upon to express their approval had certainly not been exhausted in the few days before the goods were seized by the sheriff, and the fact that they had not yet communicated the extent of it does not detract from the selection which they had actually and undoubtedly made.

It is said, however, that the invoices on which the goods were shipped were in the form of bills as for intended sales upon definite terms of credit given. But, however persuasive this may be at times in connection with other circumstances, it is not conclusive (Sturm v. Boker, 150 U. S. 312, 14 Sup. Ct. 99, 37 L. Ed. 1093), and

must give way before the evidence as to the character of the transaction with regard to which in the present instance there can be no doubt.

The petition is sustained, and the goods which were marked to be returned, amounting to $72.02 at invoice prices, are directed to be given up to the petitioners by the trustee.