## In re HAGER.

(District Court, N. D. Iowa, C. D.   February 5, 1909.)

1. **BANKRUPTCY (§ 140*) — POSSESSION OF PROPERTY — CONDITIONAL VENDOR — TRUSTEE.**

   Since a bankrupt's trustee succeeds only to the bankrupt's rights as to property owned or claimed by him at the time of the bankruptcy, and, in cases unaffected by fraud, takes such title in the same plight that the bankrupt held it, and subject to all equities impressed upon it in his hands, a bankrupt's trustee was not entitled to possession of personal property sold to the bankrupt under a conditional sale, and not paid for, as against the conditional vendors, though the conditional contract was not recorded, and was therefore invalid as against subsequent lien creditors.

   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

2. **SALES (§ 474*) — CONDITIONAL SALES — GENERAL CREDITORS — TITLE OF CONDITIONAL VENDOR.**

   A general creditor, having no specific lien on the property for the payment of his debts, cannot contest the validity of the title of the conditional vendor of personal property in the hands of the bankrupt at the time of adjudication.

   [Ed. Note.—For other cases, see Sales, Dec. Dig. § 474.*]

3. **BANKRUPTCY (§ 51*) — LIEN — BANKRUPTCY PETITION — ADJUDICATION.**

   The filing of a petition in bankruptcy or an adjudication of bankruptcy does not operate as a lien in favor of the bankrupt's trustee on any property of the bankrupt.

   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 51.*]

4. **SALES (§ 451*) — CONDITIONAL SALES — WHAT LAW GOVERNS.**

   The rights of the parties under a contract of conditional sale are to be determined by the laws of the state in which the contract is made.

   [Ed. Note.—For other cases, see Sales, Cent. Dig. § 1323; Dec. Dig. § 451.*]

5. **BANKRUPTCY (§ 345*) — PERSONAL PROPERTY — CHATTEL MORTGAGES — CONDITIONAL SALES.**

   A bankrupt held certain chattels under unrecorded conditional sale contracts, the condition of which he had not complied with. These chattels he mortgaged by an instrument which did not cover after-acquired property and which was also not recorded until about a month prior to bankruptcy. *Held* that, in the absence of proof that the mortgagee had no notice or knowledge of the claims of the bankrupt's conditional vendors, his claim against the property mortgaged was superior to that of the conditional vendors, though the mortgage itself might be voidable by the trustee as a preference.

   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 345.*]

In Bankruptcy.

J. L. Bonar, for Deere & Mansur Company and Deere & Co.

E. K. Main, for Racine-Sattley Company.

Sullivan & MacMahon, for E. A. Studer.

W. B. Quarton and E. V. Swetting, for the trustee.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

REED, District Judge. Numerous motions are filed by the respective parties to strike the abstracts of evidence and briefs of the others. They are each and all overruled.

William J. Hager, a dealer in agricultural implements at Wesley in this district, was adjudged bankrupt by this court January 15, 1908, upon his own petition filed January 13, 1908. A trustee of his estate was duly appointed, who, upon qualifying, took possession of the bankrupt's stock of agricultural implements, including the property involved in these controversies. Deere & Mansur Company, Deere & Company, and the Racine-Sattley Company (hereinafter for convenience called the implement companies) presented to the referee their several petitions claiming separate portions of the property so in custody of the trustee upon the ground that the property so claimed had been sold by them, respectively, to the bankrupt under written contracts of sale whereby each reserved the title to and right of possession of the property sold by it until it should be fully paid for in cash (which it was stipulated upon the hearing before the referee had not been done), and E. A. Studer presented a petition in which he claimed of the trustee all of the property under a chattel mortgage made by the bankrupt to him April 4, 1907, but which was not recorded until December 16th, prior to the filing of the petition in bankruptcy. The referee denied the claim of each of the petitioners, and they severally petition for a review of such orders.

The contracts of the implement companies under which they, respectively, claim portions of the property so in possession of the trustee, are substantially alike. That of Deere & Mansur Company contains the following provisions:

"That the title to and ownership of all goods shipped under this contract shall remain vested in Deere & Mansur Co., until the price thereof shall be paid in cash, and until all notes given therefor and to be given under this contract are paid, and the said Deere & Mansur Co., shall be entitled to possession of the same whenever they may feel insecure, or whenever I or we (the bankrupt) may become insolvent or bankrupt."

The others contain a like provision.

The question of the priority of right between the vendor under such a conditional contract of sale, not recorded as required by the Iowa statute. and the trustee in bankruptcy of the conditional vendee, was considered by this court in Re Tweed (D. C.) 131 Fed. 355, and in Re Smith & Shuck (D. C.) 132 Fed. 301, and it was held, following the decision of the Court of Appeals this circuit in Re Pekin Plow Co., 121 Fed. 308, 50 C. C. A. 257, and other cases, that such priority was in the trustee in bankruptcy. Since these decisions, however, the Supreme Court of the United States and the Court of Appeals this circuit have held that the trustee in bankruptcy succeeds only to the rights of the bankrupt in property owned or claimed by him at the time of the bankruptcy, and, in cases unaffected by fraud, "takes such title in the same plight and condition that the bankrupt himself held it, and subject to all of the equities impressed upon it in his hands." York Mfg. Co. v. Cassel, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782; In re Newton & Co., 153 Fed. 641–845, 83 C. C. A. 23; Dunlop v. Mercer, 156 Fed. 545, 86 C. C. A. 435.

In York Mfg. Co. v. Cassel, above, it is held, that "a creditor" against whom a conditional contract of sale of property is void, under a statute substantially like that of the state of Iowa, is one who "between the execution of the contract and the filing thereof for record has taken steps to fasten a specific lien upon the property for the payment of his debt," and that a general creditor, having no such lien, cannot contest the validity of the title of the conditional vendor; also, that the filing of a petition in bankruptcy or an adjudication of bankruptcy does not operate as a lien in favor of the trustee upon any property of the bankrupt, as stated in Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, and that the rights of the parties under said contract of conditional sale are to be determined by the laws of the state in which they are made. In Blackman v. Baxter, 125 Iowa, 118–120, 100 N. W. 75, 70 L. R. A. 250, it is held by the Supreme Court of Iowa that the creditor who may claim property covered by an unrecorded mortgage is one who has some right or interest in or lien upon the property itself; that before he may contest the validity of such a mortgage his debt must be fastened upon the property covered by the mortgage by judicial process or in some other way. The same rule applies to conditional contracts of sale of personal property. Meyer v. Car Co., 102 U. S. 1–10, 26 L. Ed. 59; York Mfg. Co. v. Cassel, 201 U. S. 344–351, 26 Sup. Ct. 481, 50 L. Ed. 782. These authorities are, of course, controlling, and it must be held, following them, that the trustee of this estate has no greater rights in or to this property than the bankrupt himself had. The referee erred, therefore, in denying the claims of the petitioners Deere & Mansur Company, Deere & Company, and Racine-Sattley Company as against the trustee.

The claim of Studer rests upon a chattel mortgage made to him by the bankrupt April 4, 1907, but not recorded until within a month before the petition in bankruptcy was filed. The referee found from the evidence that the bankrupt when he made this mortgage was insolvent and intended by it to prefer Studer, and that Studer at such time and also when the mortgage was filed for record had good reason to believe him to be insolvent, and that such preference was intended, and upon these grounds denied the claim. This finding of the referee is amply sustained by the testimony. But the trustee stands in the shoes of the bankrupt, and is in no position to contest the validity of the claims of the conditional vendors to their property because it is included in the mortgage to Studer. On the other hand, Studer may hold as against the conditional vendors any property included in his mortgage and claimed by them under their unrecorded contracts of conditional sale, unless he had actual notice thereof at the time of or before taking his mortgage, though the mortgage was not recorded. Union Bank v. Creamery Package Mfg. Co., 105 Iowa, 136, 74 N. W. 921. As to the implement companies, then, the mortgage of Studer may be good as to any of their property included therein, unless Studer had notice of their conditional contracts, of which there is no evidence, or finding by the referee. The mortgage, however, does not cover after-acquired property, and does not, therefore, cover any property obtained by the bankrupt from the implement

companies, or others for that matter, subsequent to its date. It appears from the evidence that some of the property claimed by the implement companies under their contracts of conditional sale was sold and delivered to the bankrupt in 1907, some in 1906, and perhaps some in 1905; but it does not definitely appear what was so sold and delivered before the date of the mortgage, and what was sold since. The referee also found that at the time the mortgage was made it was orally agreed between the bankrupt and Studer that the bankrupt might remain in possession of the mortgaged property and continue to sell the same in the usual course of his business, and that the mortgage should not be placed on record, and that, pursuant to said agreement, said mortgage was not filed for record until December 16, 1907. Under such finding the mortgage may be fraudulent as to those creditors who extended credit to the bankrupt after the date of the mortgage and before it was recorded, in ignorance thereof, even though the mortgage was recorded before they obtained a lien upon the property by attachment or otherwise. In re Ewald (D. C.) 135 Fed. 168. It is not necessary to now determine this, for if the mortgage was made and accepted as a preference, as the referee finds, it is voidable at the instance of the trustee, regardless of any such agreement between the bankrupt and Studer at the time it was made.

Upon the petitions of Deere & Mansur Company, Deere & Company, and Racine-Sattley Company, the orders of the referee will therefore be set aside, and the matter of each of said petitions referred back to him to ascertain and determine what of the property so coming to the possession of the trustee was sold and delivered to the bankrupt by each of said petitioners both before and since the date of the mortgage, and award to the petitioner Studer the property so sold and delivered by them to the bankrupt prior to the date of the mortgage, and to the Deere & Mansur Company, Deere & Company, and. the Racine-Sattley Company the property so sold and delivered by them, respectively, since the date of the mortgage. In all other respects the order of the referee upon the petition of E. A. Studer is approved.

The implement companies complain of the action of the referee in permitting Studer and the trustee to offer further testimony after all parties had rested on March 4, 1908; but the record of the referee shows that on that date by consent of all parties the hearing was continued to May 15, 1908, and that on that date all parties appeared before him and the matters finally submitted. The implement companies did not offer any further testimony, or request that they be permitted to do so. Had they made such request they would undoubtedly have been permitted to offer any further testimony that they desired to. They are in no position to complain of the action of the referee.

It is ordered accordingly.